UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

TRAFFIC SPORTS USA                                   INDEX NO. 11 CV 1454
                              Plaintiff


                    -against-


MODELOS RESTAURANTE, INC.                  **AFFIRMATION IN FURTHER**
d/b/a SAJUMA RESTAURANT LOUNGE            **SUPPORT OF JUDGMENT**
                              Defendant              **BY DEFAULT**
_____X


STATE OF NEW YORK      )
                       )          ss:
COUNTY OF NEW YORK  )

        Paul J. Hooten, being duly sworn, deposes and says:

        I am a member of the Bar of this Court and am associated with the firm of Paul J. Hooten

& Associates, attorney for plaintiff in the above-entitled action.  I am familiar with all the

facts and circumstances in this action.

        I make this Affirmation pursuant to Rule 55.1 and 55.2(a) of the Civil Rules for the

Eastern District of New York, in support of plaintiff's application for the entry of a default

judgment against defendants.

        This is an action to recover the unauthorized exhibition of the telecast of the March

28, 2009, CONCACAF World Cup Qualifier Tournament by the defendant at its

establishment.  See attached summons and complaint attached hereto as Exhibit "A".

        1.        This action was commenced on March 24, 2011 by the filing of the summons and

complaint.  A copy of the summons and complaint was served on the defendant Modelos

Restaurante, Inc. d/b/a Sajuma Restaurant Lounge on April 22, 2011 by service on Lisa

Vorraro, a person who is known to be an Authorized Agent.  The defendant has not answered

the complaint and the time for the defendant to answer the complaint has expired.

2.     The Court is respectfully directed to the Plaintiff's Memorandum of Law in Support of Default Judgment for a complete description of the facts in the instant case.  Only the relevant facts as to Plaintiff's damages will be covered in the instant Affirmation.

3.     On the night of the Event, Earl L. Covington observed the Event being telecast to the patrons of Modelos Restaurante, Inc. d/b/a Sajuma Restaurant.  A copy of Earl L. Covington 's affidavit is attached hereto as Exhibit "B" and incorporated herein by reference. While the Event was being broadcast in Modelos Restaurante, Inc. d/b/a Sajuma Restaurant, Earl L. Covington, observed that there were approximately fifteen (15) patrons located on the premises.

4.     As Plaintiff maintained proprietary rights in the signal of the Event, all unlawful acts of interception, receipt and broadcast of the signal by the Defendant were in violation of Plaintiff's rights and caused Plaintiff to suffer damages.

5.     A party aggrieved under §605(e)(3)(C)(i)(II) and §553(c)(3)(A)(ii) may recover statutory damages of up to $10,000.00 for each violation thereof.  Section 605(e)(3)(C)(i)(II) provides that "the party aggrieved may recover an award of statutory damages for each violation of subsec. (a) involved in the action in a sum of not less than $ 1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $ 10,000, or more than $ 100,000, as the court considers just."  Section 553(a)(1) provides, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  Section 553 (c)(3)(A)(ii) provides further that "the party aggrieved may recover an award of statutory

damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just."

6.      Moreover, if the Court finds that the violation of the Statute was "willfully and for purposes of direct or indirect commercial advantage or private financial gain…" the Court may award additional damages of up to $100,000.00 for each violation.  §605(e)(3)(C)(ii). Furthermore, a Court shall award full costs, including reasonable attorney's fees. §605(e)(3)(B)(iii).  Section 553(c)(3)(B) also provides that "In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $ 50,000."

7.      It is obvious that the Defendant's interception, receipt and broadcast of the Event were not innocent.

8.      As Defendant is a commercial establishment, they could not have obtained the transmission or the Event had the Defendant not undertaken specific wrongful actions to intercept and/or receive and broadcast the telecast.

9.      In order for an unauthorized commercial establishment to receive a broadcast such as the Event, there must be some wrongful action, such as using an unauthorized decoder, obtaining cable service and illegally altering the cable service to bring the signal of the Event into the establishment.

10.      The Defendant knew that it was wrong to receive, intercept and divert the cable service and the Event and to broadcast it Defendant's premises.

11.      Similarly, the Defendant knew that his actions were unlawful yet, with total disregard for the Statute, he nevertheless intercepted and received the transmission and

broadcast it to the patrons of Defendant's establishment.

12.     It has been held that statutory damages are appropriate where actual damages are difficult to prove.  *Tiffany (NJ) Inc. v. Luban*, 282 F.Supp.2d 123 (S.D.N.Y. 2003). *Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398 (S.D.N.Y. 2002).  The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. *Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom*, *Inc.*, 246 F.Supp.2d 394 (E.D. Pa. 2002).

13.     In the instant case, it is difficult to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendant's unlawful actions.

14.     Accordingly, we ask that that Court highly consider the statutory damages permitted in a case such as this.

15.     However, Plaintiff is able to prove actual damages which include lost profits to the Plaintiff, the profits gained by the Defendant through unlawful means, detriment to Plaintiff's goodwill and reputation, and loss of future business.  Moreover, Plaintiff believes that as a means of deterrence to the Defendant, Plaintiff must be compensated beyond its actual damages based on Defendant's willful actions.

16.     "A method commonly used by courts to determine an appropriate damages award is to assess a per person charge based upon the number of individuals in the establishment at the time of the broadcast." *J&J Sports Prods. v. Hot Shots, Inc*., 2010 U.S. Dist. LEXIS 91058  (2010); *Cablevision Sys. Corp. v. 45 Midland Enters., Inc*., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (awarding damages on a per patron basis).

17.     "In this district, courts have often multiplied the number of patrons by $54.95, the

price an individual would pay to view the event at home on a pay-per-view channel." *J&J Sports Prods. v. Hot Shots, Inc*., 2010 U.S. Dist. LEXIS 91058  (2010); *See, e.g., J & J Sports Prods. v. Arhin*, 2009 U.S. Dist. LEXIS 32852, 2009 WL 1044500 at *1 (E.D.N.Y. Apr. 17, 2009); *Garden City Boxing Club, Inc. v. Taqueria La Mixteca, Inc*., 2008 U.S. Dist. LEXIS 70489, 2008 WL 4107130 at *2 (E.D.N.Y. Sept. 4, 2008); *Kingvision Pay-Per-View Ltd. v. Cazares*, 2006 U.S. Dist. LEXIS 50753, 2006 WL 2086031 at *3-4 (E.D.N.Y. July 25, 2006).

18.     In the present case, Plaintiff first and foremost lost a profit of $700.00 which is what Defendants would have been charged to show this Event at the Defendants' establishment.   See Exhibit "C".

19.     Moreover, as demonstrated by the investigator's Affidavit attached to Plaintiff's Memorandum of Law, there were approximately 15 patrons at the Defendants' establishment.  Therefore, Defendant's profit was approximately $$824.25 for the 15 patrons of Defendant's establishment.

20.      Those individuals could have gone to an establishment licensed by the Plaintiff to view this Event, but instead went to Defendants' establishment.  The fact that there were such a considerable amount of people viewing this Event, whether within the Defendants' establishment or outside, lends support to Plaintiff's argument that its goodwill and reputation have been damaged.  Plaintiff has additionally lost future revenue as a result.

21.     It is Plaintiff's position that its loss in goodwill, reputation, and future revenue are estimated to be $2,500.00.

22.     Accordingly, Plaintiff's actual damages are $4,024.25.

23.     Moreover, in addition to actual damages, "courts use a variety of factors in

determining whether a defendant's willful conduct justifies enhanced damages, including whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *J&J Sports Prods. v. Hot Shots, Inc*., 2010 U.S. Dist. LEXIS 91058  (2010); *J & J Sports Prods., Inc. v. Alvarez*, 2009 U.S. Dist. LEXIS 89602, 2009 WL 3096074 at *5 (S.D.N.Y. Sept. 25, 2009); *Kingvision v. El Rey Del Bistec Y Caridad, Inc*., 2001 U.S. Dist. LEXIS 20531, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001).

24.     It must be noted that "The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness." *J &J Sports Prods. v. Hot Shots, Inc*., 2010 U.S. Dist. LEXIS 91058  (2010); *See also Time Warner Cable of New York City v. Taco Rapido Rest*., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) ("In order for [defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act. . . ."); *Time Warner Cable of New York City v. Googies Luncheonette, Inc*., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").  Therefore, in the instant case, the fact that Defendants broadcast this Event to its patrons for a profit without a license from the Plaintiff is evidence of Defendants' willfulness.

25.     In *J&J Sports Prods. v. Hot Shots, Inc*., 2010 U.S. Dist. LEXIS 91058  (2010), the court stated that "Taking all of these factors into account, I recommend that plaintiff be awarded an enhancement of **three times** the damages award, or $8,242.50, for willfulness, for a total statutory award of $10,990." *See J&J Sports Prods., Inc. v. Forbes*, 2008 U.S. Dist. LEXIS 101698, 2008 WL 5263732 at *6 (E.D.N.Y. Dec. 17, 2008) (**trebling for**

**willfulness** awarding plaintiff $1,000 in statutory damages, $3,000 in enhanced statutory damages, and $550 in costs); *J&J Sports Prods., Inc. v. Rodrigues*, 2007 U.S. Dist. LEXIS 45586, 2007 WL 1726462 at *7 (E.D.N.Y. Apr. 19, 2007) (**awarding treble damages** in which defendants showed the event to only 8 patrons, $1,000 in statutory damages, plus an additional $3,000 in enhanced damages, $ 1,125 in attorney's fees, and $ 450 in costs, for a total award of $ 5,575); *J&J Sports Prods., Inc. v. Drake*, 2006 U.S. Dist. LEXIS 74017, 2006 WL 2927163 at *5 (E.D.N.Y. Oct. 11, 2006)   (awarding a factor of **three times** for willfulness where thirty people were present for the illegal broadcast [$4,000 in damages plus $ 1,200 in attorneys' fees for a total judgment of $ 5,200.]); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 491 (S.D.N.Y. 1999) (awarding plaintiff $4,000, together with $635 in attorney's fees, against defendant 1; $15,000, together with $ 35 in attorney's fees and costs against defendant 2, and $9,000, together with $635 in attorney's fees and costs against defendant 3).

26.     The impact of theft of this type is far-reaching throughout the entertainment industry. According to the Office of Cable Signal Theft of the National Cable and Telecommunications Association, the cable industry loses an estimated 3 Billion Dollars annually as a result of the theft of cable signals. See Plaintiff's Memorandum of Law Page 10. Not only do these acts of theft cause legitimate businesses to lose money, but they also weaken the cable signal, thereby adversely affecting the quality of the picture received by authorized users.

27.     The continued viability of Plaintiff as a business concern depends upon the willingness and ability of legitimate commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming, such as the Event. If

such programming is made available to the public for no fee at unauthorized commercial establishments which have not purchased the right to broadcast such programming, legitimate commercial establishments will find no reason to purchase the right to legally broadcast this type of programming.  Plaintiff is operating a legitimate business of the type that Congress specifically sought to protect. That protection, however, is threatened by the Defendant's actions.

28.     Therefore, in the present case as there were estimated to be approximately 15 illegal viewers of this Event, the Court must balance the equities and award Plaintiff damages in excess of its actual damages.  It is Plaintiff's position that as its actual damages are approximately $4,024.25 and as it is customary for this Court to award treble damages to plaintiffs in similar cases, it is only equitable that Plaintiff should be awarded at least $12,072.75 plus interest, costs and disbursements based on Defendants' willful actions.

29.     Lastly, the Court is respectfully advised that Section 605(e)(3)(B)(iii) provides that "The Court shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails," under this statute.

30.     As it is in the Court's discretion to award Plaintiff damages in excess of Plaintiff's actual damages based on Defendant's willfulness, Plaintiff proposes that the Court award the Plaintiff $12,072.75 plus interest at 9% from March 28, 2009 amounting to $3,078.55 plus costs and 15,621.30.

31.     The Court is further advised that the Plaintiff is not requesting attorney's fees herein.

32.     This action seeks judgment in the amount of $12,072.75 plus interest at 9% from March 28, 2009 amounting to $3,078.55 plus costs and disbursements of this action in the

amount of $470.00 amounting in all to $15,621.30.

WHEREFORE, plaintiff requests the entry of Default and the entry of the annexed

Judgment against defendant.


Dated: Mt. Sinai, New York
       January 24, 2012



/s/ Paul J. Hooten
Paul J. Hooten (PJH9510)


Sworn to before me this
24th day of January, 2012


/s/ Cheryl E. Lorefice
Notary Public

Cheryl E. Lorefice
Notary Public, State of New York
No. 4999823
Qualified in Suffolk County
Commission Expires August 3, 2014

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

TRAFFIC SPORTS USA                                    INDEX NO. 11 CV 1454
                        Plaintiff


              -against-


MODELOS RESTAURANTE, INC.
d/b/a SAJUMA RESTAURANT LOUNGE              **AFFIDAVIT OF SERVICE**
                        Defendant
_____X

          I certify that a copy of the Affirmation in Further Support of Judgment By Default was

sent via the U.S. Postal Service certified mail within the State of New York, First Class Mail

addressed to the following on January 24, 2012:

To:  Modelos Restaurante, Inc.
     d/b/a Sajuma Restaurant Lounge
     1770 New York Avenue
     Huntington Station, NY 11746




                         By:    /s/ Lucille Eichler
                                Lucille Eichler
                                Paul J. Hooten & Associates
                                5505 Nesconset Highway, Suite 203
                                Mt. Sinai, NY 11766