**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
TRAFFIC SPORTS USA,

                              Plaintiff,

                  - against -

MODELOS RESTAURANTE, INC. d/b/a
SAJUMA RESTAURANT LOUNGE,

                             Defendant.
-------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 11-1454 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     **PRELIMINARY STATEMENT**

On March 24, 2011, Plaintiff Traffic Sports USA ("Plaintiff" or "Traffic Sports") commenced this action against Defendant Modelos Restaurante, Inc. d/b/a Sajuma Restaurant Lounge ("Modelos") for violations of the Federal Communications Act of 1934 ("FCA"), codified at 47 U.S.C. §§ 605 and 553. In the Complaint, the Plaintiff also named Reinaldo Quintanilla as a Defendant. However, on October 25, 2011, the Plaintiff filed a Stipulation discontinuing the action against him. *See* DE 6.

For a movant to obtain a default judgment, it must complete a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment. Fed. R. Civ. P. 55(b). After Defendant Modelos failed to answer or otherwise move with respect to the Complaint, the Defendant's default was noted by the Clerk of Court and the Plaintiff moved for default

judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. *See* DE 9-10. Judge Spatt has referred this motion to me for a Report and Recommendation as to whether the motion for default judgment should be granted, and, if so, whether damages should be awarded, including reasonable attorneys' fees and costs. *See* DE 13.

## II. BACKGROUND

Traffic Sports entered into a closed-circuit television license agreement ("License Agreement") whereby it received the exclusive right to exhibit the telecast of the March 28, 2009 CONCACAF World Cup Qualifier Tournament, which included the Trinidad & Tobago v. Honduras soccer match (hereafter referred to as the "Event"), at various commercial locations throughout New York. Compl. ¶ 7. A commercial establishment could only broadcast the Event if it was contractually authorized to do so by the Plaintiff. *Id.* ¶ 9. The transmission of the Event was electronically coded or "scrambled" and could only be seen clearly after it was decoded with electronic decoding equipment. *Id.* ¶ 11.

Pursuant to the License Agreement, Plaintiff marketed and distributed the closed-circuit rights by contracting with various establishments for a fee. *Id.* ¶ 10. Those establishments which contracted with Plaintiff were provided with the decoding equipment and satellite coordinates necessary to receive the signal of the Event. *Id.* ¶ 13. Defendants, however, did not contract with Plaintiff to obtain the rights to broadcast the Event. *Id.* ¶ 12. Nevertheless, on March 28, 2009, the Defendant intercepted and/or received the signal of the Event and transmitted the same to its patrons. *Id.* ¶ 14.

## III. APPLICABLE STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *See* Fed. R. Civ. P. 8(b)(6); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). However, the fact that a complaint remains unanswered will not itself suffice to establish liability on its claims since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading." *Said v. SBS Elecs., Inc.*, No. CV 08-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *adopted as mod. by* 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010). Therefore, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Id.*

In addition, when considering a motion to enter a default judgment, courts have utilized the same factors which apply to a motion to set aside entry of a default: "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02 Civ. 9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (finding that courts may consider "numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved[ ] and whether the grounds for default are clearly established or in doubt" when deciding a motion for default judgment) (internal quotation marks omitted). Ultimately, the decision to grant a motion

3

for default judgment is left to the sound discretion of the district court. *See Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999).

IV. **DISCUSSION**

    A. **Default**

As to the first factor of willfulness, the failure of the Defendant to respond to the Complaint, under the present facts, sufficiently demonstrates such willfulness. *See Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). The Plaintiff submitted to the Court an affidavit of service demonstrating that service was effectuated upon the Defendant by delivering copies of the Summons and Complaint to the Secretary of State of New York on April 22, 2011. *See* DE 2. Modelos neither answered nor responded in any way to the Complaint, nor did it request an extension of time to respond. In addition, the Plaintiff submitted certificates of service confirming that Modelos was personally served by certified mail with copies of all papers filed with the Court in connection with Plaintiff's motion for a default judgment. *See* DE 10-12.[1] Collectively, the court file removes any doubt that the Defendant's failure to respond to the Complaint, despite being properly served, was willful.

Next, the Court concludes that Modelos does not have a meritorious defense to Plaintiff's claims. Although Defendant's default constitutes an admission of all the factual allegations in the complaint as it relates to liability, Plaintiff must nevertheless demonstrate that the uncontested allegations actually set forth valid claims. Here, the Complaint adequately sets forth

---

[1] The Clerk of the Court also indicated on the Notation of Default that a copy of the Notation was mailed to the Defendant. *See* DE 9.

violations of 47 U.S.C. §§ 553(a)(1) and 605(a). Although these sections tend to overlap,

> section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, [while] section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication.

*J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 471 (E.D.N.Y. 2009). However, in light of the Second Circuit's determination that a satellite signal is considered a radio communication under Title 47, *see Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1008 (2d Cir. 1993), "both prohibit the unauthorized reception of any cable television programming services which originate as satellite-delivered 'radio communications.'" *Joe Hand Promotions, Inc. v. Fofana*, No. 06 Civ. 2099, 2007 WL 2298372, at *4 (quoting *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 434-35 (2d Cir. 2002); *see also J & J Sports Prods., Inc. v. Welch*, No. 10-CV-0159, 2010 WL 4683744, at *2 (E.D.N.Y. Nov. 10, 2010) ("Sections 553 and 605 apply, respectively, to cable and radio communications, but both provisions apply where a cable-borne transmission originates as a radio transmission.").

By virtue of its default, Modelos admits to misappropriating Plaintiff's licensed exhibition of the Event, the transmission of which was electronically coded or "scrambled," when it intercepted, received and transmitted the Event without authorization. Compl. ¶¶ 11-18. Although the Complaint does not explicitly reference that the Event originated as a satellite signal, it nonetheless states that in order for the signal to be received, it had to be decoded with electronic decoding equipment and satellite coordinates. *Id.* ¶¶ 11, 13. This reference provides a sufficient basis to establish that the Event originated from a radio transmission and that Modelos' unauthorized interception of the Event violated both Sections 553 and 605. *See 291 Bar &*

*Lounge*, 648 F. Supp. 2d at 472-73. Hence, Modelos has no meritorious defense.

The last factor to consider is whether the non-defaulting party would be prejudiced if the motion for default were denied. Denying this motion would be prejudicial to Plaintiff "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC,* No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders Dist. Council*, 2003 WL 1960584, at *3). Since all three factors have been met with regard to the Defendant, the Court respectfully recommends to Judge Spatt that default judgment be entered against Modelos.

**B. Damages**

Traffic Sports seeks damages in the amount of $12,072.75. After factoring in the requested interest and costs, the total judgment requested by Plaintiff is $15,621.30.

Although a default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability, a plaintiff must still prove damages. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005). Therefore, the only question remaining is whether a plaintiff has provided adequate support for the relief he seeks. *See Greyhound Exhibitgroup, Inc*., 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159. In addition, the moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether detailed affidavits or documentary evidence are sufficient. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" *La Barbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). In this case, the Plaintiff submitted a memorandum of law in support of its request for judgment by default ("Pl.'s Mem.") with exhibits annexed, including the affidavit of private investigator Earl L. Covington ("Ex. A") and the affidavit of Enrique Sanz, Vice-President of Traffic Sports ("Ex. B"). Plaintiff's counsel, Paul J. Hooten, also submitted an affirmation in further support of judgment by default ("Hooten Aff."). The Court finds that pursuant to the applicable case law, these submissions provide a sufficient basis for the Court to provide an award of damages without a further hearing.

1. **Statutory Damages**

As an initial matter, the law in this Circuit is clear that a plaintiff may only recover under either Section 553 or 605 of the FCA, but not both. *See, e.g.*, *291 Bar & Lounge*, 648 F. Supp. 2d at 472; *El Norteno Rest.*, 2007 WL 2891016, at *3; *Kingvision Pay-Per-View, Ltd. v. Autar*, 426 F. Supp. 2d 59, 62 (E.D.N.Y. 2006); *New Contenders, Inc. v. Diaz Seafood Corp.*, 96 Civ. 4701, 1997 WL 538827, at *1 (S.D.N.Y. Sept. 2, 1997) (citing *Int'l Cablevision Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996). Since Section 605 allows for a greater recovery than Section 553,

the Court will assess damages under Section 605. *See J & J Sports Prods., Inc. v. Alvarez,* No. 07 Civ. 8852, 2009 WL 3096074, at *4 (S.D.N.Y. Sept. 25, 2009).

Section 605(e) of the FCA permits an aggrieved party to elect to recover either (1) actual damages suffered as a result of the violation and any profits of the violator that are attributable to the violation or (2) statutory damages for a sum not less than $1,000 or more than $10,000 for each violation. *See* 47 U.S.C. §§ 605(e)(3)(C)(i)(I)-(II). "As actual damages frequently prove difficult to establish, plaintiffs generally elect to recover statutory damages instead under 47 U.S.C. § 605(e)." *291 Bar & Lounge*, 648 F. Supp. 2d at 474 n.3; *see also Kingvision Pay-Per-View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226, at *3 (S.D.N.Y. Apr. 5, 2004) ("Statutory damages are appropriate where actual damages are difficult to prove."). The Court agrees with the Plaintiff that the better approach in this case is to award statutory damages. Although Plaintiff indicates that it elects to receive statutory damages, Pl.'s Mem. at 8, it then attempts to prove actual damages, including lost profits. While Plaintiff correctly identifies a common method used by courts to determine damages in these types of cases (patrons multiplied by the residential charge for the pay-per-view event), it incorrectly alleges that this figure evidences lost profits. In actuality, this figure helps courts determine what amount of *statutory damages* to award a plaintiff. In addition, the Plaintiff's claim that its loss in goodwill, reputation and future revenue were collectively damaged in the amount of $2,500 is nothing more than an estimate, lacking any legal or factual support. As such, the Court sees no basis to stray from an award of statutory damages.

"The amount of damages to be awarded pursuant to § 605 rests in the sound discretion of the court." *J & J Sports Prods., Inc. v. Hot Shots, Inc.*, No. CV-09-1884, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010); *see also 291 Bar & Lounge*, 648 F. Supp. 2d at 474 ("Section 605 vests the court with broad discretion in determining statutory damages."). Courts in this Circuit apply one of two methods in calculating statutory damages for cases involving the unauthorized receipt and exhibition of pay-per-view events. *See 291 Bar & Lounge*, 648 F. Supp. 2d at 474; *Autar*, 426 F. Supp. 2d at 63. Where the exact number of patrons is unknown, courts have awarded a flat sum per violation. *See Autar*, 426 F. Supp. 2d at 63. However, when there is evidence of the number of patrons present at the unauthorized broadcast, "courts multiply the number of patrons present . . . by a specific dollar amount, typically (but not always) the customary residential charge for the pay-per-view event being shown." *El Norteno Rest.*, 2007 WL 2891016, at *3; *see also 291 Bar & Lounge*, 648 F. Supp. 2d at 474 (calculating damages based on "the number of patrons observed in the defendant establishment" and then multiplying that figure by a set amount). In this District, courts have recently used $54.95 as a starting point since that is the price an individual would have to pay to view the event at home. *See Hot Shots*, 2010 WL 3522809, at *2; *J & J Sports Prods., Inc. v. Arhin*, No. 07 CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. Apr. 17, 2009).

The unauthorized broadcast of the Event occurred on March 28, 2009. Although what constitutes a "violation" is not defined in § 605, "most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Garden City Boxing Club, Inc. v. Perez*, No. 05 CV 3713, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006). Therefore, the Court is only dealing with one Section 605 violation here. Earl

9

Covington, a private investigator hired by the Plaintiff who was present the night of the violation, stated that the highest number of patrons present at Defendant's broadcast of the Event was 15. *See* Pl.'s Mem. Ex. A. Multiplying 15 patrons by $54.95 (the residential pay-per-view cost) yields a figure of $824.25. Since this figure falls below the statutory minimum provided under Section 605, the Court respectfully recommends to Judge Spatt that statutory damages of $1,000 be awarded to the Plaintiff.

### 2. *Enhanced Damages*

Traffic Sports also maintains that it is entitled to additional damages pursuant to Section 605 since the Defendant's actions were willful. Section 605 states that

> [i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii). "Willfulness is defined as 'disregard for the governing statute and an indifference to its requirements.'" *J & J Sports Prods., Inc. v. Echeverria*, No. 06 CV 2894, 2007 WL 1160423, at *3 (E.D.N.Y. Mar. 16, 2007) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985)). It has been determined that "[t]he broadcast of an event without authorization is a deliberate act, and thus establishes willfulness." *Welch*, 2010 WL 4683744, at *4; *accord Hot Shots*, 2010 WL 3522809, at *2. The Plaintiff alleges that the Defendant's interception, receipt and broadcast were done knowingly and unlawfully since the Defendant could not have obtained the transmission of the Event without committing wrongful acts to intercept and/or receive it. *See* Pl.'s Mem. at 6, 14. This

Court agrees. *See 291 Bar & Lounge*, 648 F. Supp. 2d at 475 ("[I]t is difficult to see how the defendant could have involuntarily intercepted-*and exhibited*-the Fight, as the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed."); *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). As such, the Court finds Defendant's conduct to be willful.

Courts look to various factors in determining whether a defendant's willful conduct justifies enhanced damages. These include "(i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Hot Shots*, 2010 WL 3522809, at *2; *see also Welch*, 2010 WL 4683744, at *4. In this case, there is no indication that Defendants are repeat violators. With regard to actual damages suffered by Plaintiff, the only damages for which Plaintiff has provided supporting evidence is the licensing fee of $700, which Defendants would have had to pay to lawfully disseminate the Event. *See* Pl.'s Mem. Ex. B. ¶ 8 ("For example, for this particular event, if a commercial establishment had a maximum fire code occupancy of 15 persons, the commercial sublicense fee would have been $700.00."). Furthermore, the Affidavit of the private investigator indicates that the Defendant advertised the Event by posting signs located in the front of the establishment as well as in the window of the front entrance. *See* Pl.'s Mem., Ex A. Taking all these factors into account, the Court finds that Plaintiff is entitled to enhanced damages since (1) the Event was affirmatively and willfully intercepted for financial gain, and

(2) there was no way that the broadcast could have been inadvertently intercepted.  See *Welch*, 2010 WL 4683744, at *4.

Courts typically fix the amount of enhanced damages as a multiple of the statutory damages awarded.  *See Joe Hand Promotions, Inc. v. La Nortena Rest. Inc.*, No. 10-CV-4965, 2011 WL 1594827, at *5 (E.D.N.Y. Mar. 28, 2011).  The multiples most commonly used by this District are either two or three times the statutory damages.  *Compare Kingvision Pay-Per-View, Ltd. v. Vibes Sports Bar and Café, Inc.*, No. 10-CV-127, 2011 WL 1331858, at *4 (E.D.N.Y. Mar. 15, 2011) (enhanced damages equal to three times the statutory damages) *and Hot Shots*, 2010 WL 3522809, at *3 (same), *with J&J Sports Prods., Inc. v. Zevallos*, No. 10 CV 4049, 2011 WL 1810140, at *4 (E.D.N.Y. Apr. 22, 2011) (enhanced damages equal to two times the statutory damages) *and La Nortena*, 2011 WL 1594827, at *5 (same).  However, in those cases involving small commercial defendants where the statutory damages awarded equaled the statutory minimum, courts have awarded enhanced damages equal to three times the amount of statutory damages awarded.  *See Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 116 (E.D.N.Y. 2011) (concluding that enhanced damages equal to three times the statutory award occurred in cases where the statutory damages award was $1,000); *J & J Sports Prods., Inc. v. Bernal*, No. CV 2009-3745, 2010 WL 3463156, at *5 (E.D.N.Y. July 28, 2010) (awarding enhanced damages of $3,000, which was three times the $1,000 awarded in statutory damages); *J & J Sports Prods., Inc. v. Forbes*, No. 07-CV-4394, 2008 WL 5263732, at *6 (E.D.N.Y. Dec. 17, 2008) (same).  In light of (1) the similar circumstances between this case and those which allowed enhanced damages equal to three times the $1,000 statutory award, (2) the fact that Modelos avoided having to pay the licensing fee, and

(3) Modelos advertised its willful violation, this Court, in its discretion, finds that an enhancement of three times the statutory damages is proper here. Therefore, The Court respectfully recommends to Judge Spatt that enhanced damages be awarded to the Plaintiff in the amount of $3,000.

### 3. Pre-judgment Interest

The Plaintiff also asserts that it is entitled to interest calculated at the statutory rate of 9% per annum running from March 28, 2009, for a total of $3,078.55. *See* Pl.'s Mem. at 18. However, Section 605 does not refer at all to interest and the "majority of courts to have considered the issue have denied an award of prejudgment interest." *See Hot Shots*, 2010 WL 3522809, at *3. Although a few courts in this District have awarded pre-judgment interest at a rate of 9% pursuant to N.Y. C.P.L.R. 5004, the more recent decisions addressing this issue have denied such requests. *Id.; see also Autar*, 426 F. Supp. 2d at 65. The leading case on this issue, *Kingvision Pay-Per-View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226 (S.D.N.Y. Apr. 5, 2004), denied pre-judgment interest and reasoned that since claims for punitive damages are an exception to pre-judgment interest under the N.Y. C.P.L.R., "[s]tatutory damages under the Communication Act are analogous to punitive damages in that they are designed to deter others from similar infringing activity." 2004 WL 744226, at *5. Based on this reasoning and the current status of the law on this issue, the Court respectfully recommends that pre-judgment interest not be awarded to the Plaintiff.

### 4. Costs

Lastly, the Plaintiff argues that under Section 605, it is entitled to an award of $470 in costs and disbursements. *See* Pl.'s Mem. at 17-18. Section 605 expressly provides that if a violation has occurred, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Based on this language, courts in this Circuit have held that under Section 605, the award of costs and attorneys' fees are mandatory.[2] *See Autar*, 426 F. Supp. 2d at 65. However, the Plaintiff here has failed to submit any documentation to substantiate costs allegedly incurred in this action. The only incurred cost the Court can ascertain is the $350 filing fee, which is apparent on the Court docket. *See* Electronic Order, Mar. 24, 2011. In light of this information, the Court respectfully recommends that Plaintiff be awarded $350 in costs.

## V. CONCLUSION

For the reasons set forth above, the Court respectfully recommends to Judge Spatt that default judgment be entered against Defendant Modelos in the amount of $4,350, broken down as follows:

- $1,000 in statutory damages;
- $3,000 in enhanced damages; and
- $350.00 in costs.

---

[2] The Plaintiff indicates that it does not seek an award of attorneys' fees. *See* Pl.'s Mem. at 18.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Arthur D. Spatt, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchs. Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Plaintiff's counsel is directed to serve a copy of this Report and Recommendation upon the Defendant forthwith by overnight mail and first class mail and to file proof of service on ECF.**

                    **SO ORDERED.**

Dated: Central Islip, New York
       August 1, 2012

                    /s/ A. Kathleen Tomlinson
                    A. KATHLEEN TOMLINSON
                    U.S. Magistrate Judge